UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRI SCHMERL and
MICHAEL SCHMERL,

      Plaintiffs,                                Case No. 1:05-cv-156

v                                              Hon. Wendell A. Miles

LEXUS, a California corporation
(a division of Toyota Motor Sales USA, Inc.), and
HARVEY AUTOMOTIVE, INC.,
(d/b/a Harvey Lexus of Grand Rapids),
a Michigan corporation,
jointly and severally,

      Defendants.
_____/

OPINION AND ORDER ON PLAINTIFFS' MOTION
FOR REMAND TO STATE COURT

      Plaintiffs Terri and Michael Schmerl filed this action in Michigan's Kent County Circuit Court. Plaintiffs' eight-count complaint asserts various claims arising from their purchase of a 2004 Lexus automobile which, plaintiffs allege, was defective. The defendants filed a timely Notice of Removal. In their Notice, the defendants invoke federal question jurisdiction under 28 U.S.C. § 1331 based on plaintiffs' allegation that the defendants violated the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act ("MMWA"), 15 U.S.C. § 2301 *et seq.* The matter is currently before the court on plaintiffs' Motion for Remand to State Court (docket no. 14). The defendants have opposed the motion.

      For the reasons to follow, the court DENIES the motion.

**I**

Plaintiffs are individuals who reside in Traverse City, Michigan.  Defendant Lexus is a California corporation which manufactures automobiles.  Defendant Harvey Automotive, Inc. ("Harvey") is a Michigan corporation which sells, leases, and services Lexus automobiles at a facility located in Grand Rapids, Michigan.

On or about August 21, 2004, plaintiffs purchased a new 2004 Lexus RX 330 automobile from Harvey in Grand Rapids.  As reflected in attachments to plaintiffs' complaint, the "Total Sale Price" of the vehicle – including finance charges – was $49,855.80.  The vehicle, which plaintiffs allege was intended primarily for personal, family, and/or household use, was manufactured by Lexus.  Plaintiffs allege that the vehicle was repeatedly plagued by problems, including an "excessive sulfur smell" and, despite repeated complaints and/or requests by plaintiffs, the problems were not remedied by Lexus and Harvey.  Plaintiffs further allege that they were rebuffed when they requested that the defendants "buy-back" the vehicle.

Plaintiffs filed this action in the Kent County Circuit Court in January, 2005.  Plaintiffs' eight-count complaint includes the following claims: a state law claim of breach of the warranty of merchantability (Count I); violation of the MMWA (Count II); a state law claim of breach of the warranty of fitness (Count III); a claim for "revocation" (Count IV); a claim alleging violation of the Michigan Consumer Protection Act ("MCPA") (Count V); a claim alleging violation of Michigan's automobile "Lemon Law," M.C.L. 257.1401 *et seq*. (Count VI); a state law claim alleging negligent repair (Count VII); and a state law claim alleging breach of express warranty (Count VIII).  As relief on their numerous claims, plaintiffs have expressly demanded that the court require defendants to accept a return of the vehicle and refund plaintiffs their purchase price.  Plaintiffs also seek incidental and consequential damages including repair costs, insurance costs, emotional distress damages, expenses associated with returning the vehicle for repeated repair attempts, and expenses

for loss of use, interest, and sales tax. Finally, plaintiffs seek unspecified statutory damages under Michigan law.

## II

In their motion,[1] plaintiffs argue that the court lacks subject matter jurisdiction over this case because pursuant to the MMWA, no claim under the statute is cognizable in federal court if the amount in controversy is less than the sum or value of $50,000, exclusive of interests and costs. Because they purchased the Lexus vehicle for an amount less than $50,000, plaintiffs contend, the defendants improperly removed the case, which must be remanded to the State court as provided by 28 U.S.C. § 1447(c).[2]

"Generally, a civil case brought in a state court may be removed by a defendant to federal court if it could have been brought there originally." Rogers v. Wal-Mart Stores, Inc., 230 F.3d 868, 871 (6th Cir. 2000) (citing 28 U.S.C. § 1441(a)). Federal district courts generally have federal question jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The MMWA allows a "consumer" to bring an action "for damages and other legal and equitable relief" where he or she claims to have suffered damage caused "by the failure of a supplier, warrantor, or service contractor to comply with any obligation under [the statute], or under a written warranty, implied warranty, or service contract[.]" 15 U.S.C. § 2310(d)(1). The MMWA, however, provides a specific exception to section 1331's more general provision granting federal district courts jurisdiction over all civil actions arising federal law.

---

[1] The court assumes that both plaintiffs have joined in the motion for remand, even though the motion and supporting brief contain repeated references to "plaintiff" in the singular.

[2] Section 1447(c) provides, in pertinent part, that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

Although the MMWA is a federal statute, the United States district courts do not have jurisdiction over all claims brought under its terms; instead, claims under the MMWA are not cognizable in a federal district court under the following circumstances:

> (A) if the amount in controversy of any individual claim is less than the sum or value of $25;
>
> (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or
>
> (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

15 U.S.C. § 2310(d)(3). Therefore, although the MMWA provides a cause of action to a consumer injured by a warrantor's failure to comply with a written or implied warranty, for purposes relevant here the statute's express terms include a jurisdictional threshold which grants jurisdiction to federal district courts only where the "amount in controversy" is at least $50,000 "computed on the basis of all claims to be determined in this suit[.]" 15 U.S.C. § 2310(d)(3)(B). Claims under the MMWA which fall under the federal jurisdictional threshold may be brought in a State court of competent jurisdiction. 15 U.S.C. § 2310(d)(1)(A).

A defendant desiring to remove a case has the burden of proving that the jurisdictional requirements are satisfied. Gafford v. General Elec. Co., 997 F.2d 150, 155 (6th Cir. 1993) (applying diversity statute, 28 U.S.C. § 1332(a)). In diversity cases, which, like the MMWA, have an amount-in-controversy requirement, this burden requires the removing defendant to prove, by a preponderance of the evidence, that the amount in controversy "more likely than not" exceeds the jurisdictional amount. Gafford, 997 F.2d at 158. A removing defendant may properly rely on the extent of the relief sought by plaintiffs in attempting to meet its burden to show that the amount in

4

controversy requirement has been met.  Hayes v. Equitable Energy Resources Co., 266 F.3d 560, 571 (6th Cir. 2001).

Plaintiffs' complaint does not identify a precise amount claimed, instead praying for judgment "in whatever amount above $25,000" they are found to be entitled.  Plaintiffs argue that under Golden v. Gorno Bros., Inc., 274 F. Supp.2d 913 (E.D. Mich. 2003), aff'd, No. 03-1991, 2005 WL 1389025 (6th Cir. June 14, 2005), the court may consider only the damages to which they may be entitled under the MMWA – excluding damages potentially available on state law claims over which the court may have supplemental jurisdiction – in determining whether the jurisdictional threshold is satisfied.  According to the district court in Golden, "the amount in controversy for purposes of the [MMWA] does not include damages flowing from any pendent state law claim brought by a plaintiff."  274 F. Supp.2d at 917 (citing Ansari v. Bella Automotive Group, Inc., 145 F.3d 1270, 1272 (11th Cir. 1998) and Barnes v. West, Inc., 249 F. Supp.2d 737, 739 n.4 (E.D. Va. 2003)).  Plaintiffs contends that Golden "is the only published opinion on point in this District that [they have] been able to locate."  Plaintiff's [sic] Brief in Support of Motion for Remand to State Court at [unpaginated] 2.

The district court's dismissal of Golden for lack of subject matter jurisdiction has since been affirmed in a non-unanimous decision issued in the Sixth Circuit on June 14, 2005.  Golden, 2005 WL 1389025 (6th Cir. June 14, 2005).  However, the majority's decision affirming the dismissal did not specifically address whether damages flowing from separate state law claims may be considered in determining the amount in controversy in cases where the MMWA is invoked as the basis for federal jurisdiction.  The district court in that case had declined to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3), another decision not specifically addressed by the majority of the panel on appeal.  Instead, the sole issue seemingly

addressed by the majority was "whether the entire amount of the contract, including the finance charges, should be included in determining the amount in controversy" for purposes of the MMWA. 2005 WL 1389025, *2.

Golden was decided in the Eastern District, not this district. In Golden, the District Judge cited two other cases – Ansari and Barnes – without independently determining whether these other cases correctly applied the language of 15 U.S.C. § 2310(d)(3)(B), which expressly provides that the "amount in controversy" under the statute is to be "computed on the basis of ***all claims to be determined in this suit***" (emphasis supplied). This unambiguous statutory language is difficult to reconcile with Judge Borman's conclusion that other claims – specifically state law claims included in the action – may not be considered in computing the amount in controversy where federal jurisdiction is based on the MMWA. This court has therefore reviewed Ansari and Barnes to determine whether these cases provide justification for Judge Borman's conclusion in Golden.

In Ansari, an 11th Circuit panel concluded that "the amount in controversy for purposes of the [MMWA] § 2310(d)(3)(B) does not include damages flowing from any pendent state law claim brought by a plaintiff." 145 F.3d at 1272. In this holding, the 11th Circuit panel was expressing its agreement with an earlier Fifth Circuit case, Boelens v. Redman Homes, Inc., 748 F.2d 1058, 1071 (5th Cir. 1984). The Ansari panel also cited a Middle District of Georgia case, Simmons v. Taylor Childre Chevrolet-Pontiac, Inc., 629 F. Supp. 1030, 1033 (M.D. Ga. 1986), in support of its conclusion.

In Boelens, the plaintiffs sought to turn what was essentially a personal injury claim into a claim under the MMWA, an attempt which the panel rejected, concluding that the MMWA did not create a federal cause of action for personal injury damages based solely on a breach of warranty. 748 F.2d at 1066. Because personal injury damages are not recoverable under the MMWA, the

6

panel further concluded, these damages could not be counted toward satisfaction of the amount-in-controversy requirement. Id. at 1069. Finally, the panel concluded, neither an independent tort claim nor a Texas Deceptive Trade Practices Act claim which the plaintiffs had pled could be used to confer jurisdiction under the MMWA. Id. at 1071 and n.19. The Boelens panel, however, did not explain how this conclusion was justified by the statutory language specifying that the amount in controversy be "computed on the basis of all claims to be determined in this suit" as provided by 15 U.S.C. § 2310(d)(3)(B).

In Barnes, which was not a removal case, the plaintiff conceded that she did not meet the amount in controversy requirement, and the court concluded that there was no "independent basis" for jurisdiction over her MMWA claim. 249 F. Supp.2d at 739. In a footnote to its decision, the court observed that the purchase price of plaintiff's car was only $18,235.85. Id., n.4. The court further observed that the plaintiff "could not aggregate her state law claims . . . to meet the MMWA's amount in controversy requirement." Id. The court cited several cases in support of this statement, including Ansari, Boelens, Simmons, and three other district court decisions.

In the Simmons case, the court concluded that plaintiff had not shown that the seller had extended to plaintiff a warranty falling within the definition contained in the MMWA. 629 F. Supp. at 1032. However, the court went on to conclude that even if the plaintiff had made a claim which fell under the statute, he had not met the amount in controversy requirement by seeking punitive damages – based on the purchase of a vehicle for $15,414 – because Georgia law did not permit punitive damages in cases based on contract and a pendent state tort claim could not be used to confer jurisdiction under the MMWA. 629 F. Supp. at 1033. Because the court simply relied on Boelens in this dicta, Simmons adds no further justification for an interpretation of the MMWA which excludes state law claims from computation of the amount in controversy requirement.

Although a number of courts which have considered the issue have therefore concluded that damages available on state law claims included in an MMWA action may not be used to determine whether the jurisdictional threshold is met, these cases do not explain how a reading of 15 U.S.C. § 2310(d)(3) as a whole supports this conclusion. An unpublished Eastern District of Pennsylvania decision, Hatcher v. Chrysler Motors Corp., No. 89-6792, 1990 WL 21164 (E.D. Pa. 1990), appears to have made an attempt to justify this conclusion. In Hatcher, the court relied on the legislative history of the MMWA, which the court believed "reveals that the jurisdictional requirements are in place 'to avoid trivial or insignificant actions being brought as *class actions* in the federal courts.'" (citing 1974 U.S. Code Cong. & Admin. News 7702, 7724). Although the case was not a class action, the court went on to express its belief that Congress intended the statutory language – "all claims to be determined in this suit" – only "to allow a *class* of plaintiffs to add all of their claims over $25 together to meet the amount-in-controversy requirement." 1990 WL 21164 *3. According to the court in Hatcher,

> This reading comports with Congress's desire to avoid inundating the federal courts with warranty claims – to allow a Plaintiff to add pendent state claims to a [MMWA] claim would read out the jurisdictional requirement since virtually *every* plaintiff could include pendent state claims seeking damages in excess of $50,000. This Court reads the language of [§2310(d)(3)(B)] to allow only claims under the [MMWA] to be summed when determining the jurisdictional amount.

Id.

The problem with this analysis is that it does not take into account subsections (A) and (C) of section 2310(d)(3), which address "individual" claims of less than $25 and class actions, respectively. Under subsection (A) of § 2310(d)(3), a claim may not be brought in federal court "if the amount in controversy of any individual claim is less than the sum or value of $25[.]" In addition, under subsection (B) of § 2310(d)(3), no class action may be brought in federal court if the

8

number of named plaintiffs is less than one hundred. The existence of these two additional limitations does not support a reading of subsection (B)'s "all claims" language which imputes an additional limitation not expressly provided by Congress: that "all claims" be read as "all *federal* claims *only*." Congress must be presumed to have been aware of the doctrine of pendent jurisdiction – codified in 1990 as supplemental jurisdiction in 28 U.S.C. § 1367 – when it enacted the MMWA in 1975. See United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130 (1966); see also Detroit Edison Co. v. Michigan Dep't of Environmental Quality, 29 F. Supp.2d 786, 792 (E.D. Mich. 1998) ("In the statutory provisions of 28 U.S.C. § 1367, Congress has codified the long-standing principles of pendent and ancillary jurisdiction under a 'common heading'") (quoting City of Chicago v. International College of Surgeons, 522 U.S. 156, 118 S.Ct. 523, 530 (1997)).

In addition, Hatcher's concern that allowing reading § 2319(d)(3)(B)'s "all claims" language to permit a computation of the amount in controversy which includes state law claims "would read out the jurisdictional requirement since virtually *every* plaintiff could include pendent state claims seeking damages in excess of $50,000" is not warranted. In 1975, when the MMWA was enacted, Congress would also have been aware of case law construing the similar phrase – "matter in controversy" – used in establishing limits on federal diversity jurisdiction contained in 28 U.S.C. § 1332. See St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-289, 58 S.Ct. 586, 590 (1938) ("The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal") (footnotes omitted); see also Horton v. Liberty Mutual Ins. Co., 367 U.S. 348, 353, 81 S.Ct. 1570 (1961) ("The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or

9

is in some way shown that the amount stated in the complaint is not claimed 'in good faith.' In deciding this question of good faith we have said that it 'must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal'"). Finally, Congress would also have been well aware of 28 U.S.C. § 1441 – the removal statute – when it enacted the jurisdictional limitations contained in the MMWA. In sum, a reading of the "amount in controversy" provision of § 2310(d)(3)(B) which adds the limitation "federal" to the clause "computed on the basis of all claims to be determined in this suit" makes no sense either on its face, in statutory context, or in the context of what Congress must have known when it enacted the statute.

The court therefore concludes that those cases which construe 15 U.S.C. § 2310(d)(3)(B) to provide for computation of the amount in controversy by excluding all non-federal claims are wrong because they are not supported by the express language of the statute, which requires computation "on the basis of all claims to be determined in this suit." This court will not follow wrongly-decided cases from other jurisdictions which contradict the unambiguous language of a federal statute.

The defendants have argued that the amount in controversy requirement of the MMWA is satisfied, insofar as plaintiffs have sought damages such as repair costs, loss of wages, interest and sales tax, loss of use of the vehicle, loss of value to the vehicle, and emotional distress, which, if added to the purchase price of the vehicle, would total $50,000 or more.[3] The defendants are

---

[3]Using the purchase price of the vehicle as a measure of the amount in controversy makes sense, particularly where plaintiffs are seeking equitable relief, as they are in this case. See Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 347, 97 S.Ct. 2434, 2443 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation") (citations omitted); Muller v. Winnebago Indus., Inc., 318 F. Supp.2d 844, 847 (D. Ariz. 2004) ("We have no doubt that Congress intended
(continued...)

10

correct. Certainly, the majority's decision on appeal in Golden holds that "[t]he finance charges of a contract should not be added when determining if the amount in controversy has been satisfied." 2005 WL 1389025, *6.[4] The attachments to plaintiffs' complaint provide a "Cash Price" for the vehicle, before finance charges, of $44,849.74. However, if the court counts toward the amount in

---

[3](...continued)
the product to be the measure of the amount in controversy requirement"); Ferrer Santiago v. Daimler Chrysler Corp., 265 F. Supp.2d 171, 172 (D.P.R. 2003) ("Clearly, the $29,000.00, representing the cost of the vehicle, can be computed when satisfying the $50,000.00 minimum jurisdictional requirement").

[4]Plaintiffs argue that 15 U.S.C. §2310(d)(3)(B) "specifically excludes attorney fees (*and any interest on the principle* [sic] *payments*) from the computation of the 'amount in controversy.'" Plaintiff's Brief in Support of Motion for Remand to State Court at (unpaginated) 2 (emphasis supplied).

Plaintiffs' statement is not entirely accurate. It is certainly true that courts which have considered the question have uniformly concluded that attorney fees are "costs" within the meaning of the statute and therefore excluded from the amount in controversy determination. Suber v. Chrysler Corp., 104 F.3d 578, 588 n.12 (3d Cir. 1997) (citing cases). However, with respect to interest, rather than referring to "interest on the principle," section 2310(d)(3)(B) expressly excludes only "interests and costs" from the calculation of the amount in controversy. On appeal in Golden, the majority seemingly equated the word "interest" with "finance charge" for purposes of the MMWA. See Golden, 2005 WL 1389025, *4 ("Certainly, the question of whether federal jurisdiction exists under the [MMWA] should not be determined by whether a finance contract was used in purchasing the automobile. This is particularly true since the [MMWA] provides that the amount in controversy does not include interest"). However, the appellee in Golden was not owed any of the finance charge. See id. at *4 (observing that the appellee-seller "was never entitled to anything more than the $42,903.41 that it received"). This court has not located any other case law, apart from Golden, which construes the word "interests" as used in section 2310(d)(3)(B). Judge Moore, who dissented in that case, disagreed that Congress intended to exclude vehicle finance charges from the amount in controversy; she believed that the phrase "exclusive of interests and costs" was "more appropriately understood to refer to amounts such as pre-judgment interest and filing fees that parties incur during the litigation process." Golden, 2005 WL 1389025, *8 (Moore, J., dissenting).

Plaintiffs have not contended that finance charges would not be recoverable as an element of incidental damages under a state law claim for breach of warranty. It is noted that plaintiffs' complaint expressly requires, as damages for breach of warranty, "interest and sales tax." Complaint at 5, ¶ 25; Complaint at 13, ¶ 71. In an unpublished decision, a Sixth Circuit panel concluded that the similar "matter in controversy" requirement contained in the diversity statute, 28 U.S.C. § 1332(a), which also excludes interest and costs, was satisfied where the plaintiff asserted a claim under the Tennessee usury statute, the amount contracted for was $35,000, and the interest payable over the terms of the agreement exceeded $60,000. Parris v. Mego Mortgage Corp., No. 99-6295, 2001 WL 857198, *2 (6th Cir. June 21, 2001).

controversy the damages potentially recoverable on plaintiffs' state law theories of liability, the jurisdictional threshold is exceeded.

Plaintiffs have asserted a claim under Michigan's Lemon Law, which provides that a if a new motor vehicle was purchased, a consumer "shall have the right to demand a refund" of the purchase price. M.C.L. § 257.1403(1)(a). (Plaintiffs have expressly alleged that the vehicle was "purchased" – as opposed to leased – and that the vehicle was "new." Complaint at 2, ¶ 4.) The statute also provides, in relevant part, that the "purchase price" of the vehicle shall be computed "less a reasonable allowance for the consumer's use of the vehicle[.]" M.C.L. § 257.1403(2). This "reasonable allowance for use" would, in this case, be computed as follows:

> the purchase or lease price of the new motor vehicle multiplied by a fraction having as the denominator 100,000 miles and having as the numerator the miles directly attributable to use by the consumer and any previous consumer prior to his or her first report of a defect or condition that impairs the use or value of the new motor vehicle plus all mileage directly attributable to use by a consumer beyond 25,000 miles. If a vehicle is replaced or refunded under the provisions of this section, if towing services and rental vehicles were not made available without cost to the consumer, the manufacturer shall also reimburse the consumer for those towing costs and reasonable costs for a comparable rental vehicle that were incurred as a direct result of the defect or condition.

Id.

Here, the attachments to plaintiffs' complaint – which are considered a part of their pleading pursuant to Fed.R.Civ.P. 10(c) – identify the "Total Sale Price" of the Lexus as $49,855.80. (This includes finance charges; the actual "cash price" including "any accessories, services and taxes" is identified as $44,849.74.) The attachments to the complaint also indicate that plaintiffs claimed to have reported the "stench" associated with the Lexus soon after purchasing it. (This is according to a letter which plaintiffs wrote to Lexus headquarters dated October 8, 2004.) The complaint's attachments further indicate that on the date of purchase – August 21, 2004 – the odometer on the

vehicle registered 11,641 miles. At the time of the first documented service call to Grand Rapids, however – on September 24, 2004 – the mileage is listed as 14,410. Even if one assumes that plaintiffs did not report problems with the vehicle until this September 24, 2001 service call (which indicates that this was a "re-check for rotton [sic] egg smell"), the "reasonable allowance" for use could not exceed, at most, $1,470.25. Therefore, the purchase price of $49,855.80 less this allowance for use equals $48,385.55 – just $1,614.45 less than the jurisdictional threshold.

Plaintiffs have also asserted a claim under the MCPA. Under the MCPA, a consumer may bring a civil action seeking, among other things, "to recover actual damages or $250.00, whichever is greater[.]" M.C.L. § 445.911(2). Plaintiffs have expressly demanded recovery of "emotional distress damages" and "statutory damages" as recovery for this claim. Complaint at 10. Therefore, even if actual damages for emotional distress are not recoverable under this Michigan statute, plaintiffs – if they are successful – would recover the statutory minimum damages of $250.00. This would put plaintiffs potential recovery already at $48,635.55, considering only two of their state law claims.

But plaintiffs have asserted other claims and sought other damages.[5] They allege breach of express and implied warranties in addition to negligent repair, for which they seek such damages as repair costs, loss of wages (presumably associated with transporting the vehicle from Traverse City to Grand Rapids for repair), loss of use of the vehicle, and damages associated with the "inconvenience and emotional trauma of dealing with the repair history of a new vehicle." Complaint at 5, ¶ 25; see id. at 12, ¶ 66. Even assuming that their repair costs were minimal (for plaintiffs' attachments to the complaint appear to indicate that Harvey serviced the Lexus at no

---

[5]Michigan's Lemon Law does not limit or prohibit plaintiffs from pursuing other legal remedies provided to consumers for breach of warranty. M.C.L. § 257.1404.

charge), and assuming that their damages for loss of use due to the defects were non-existent (the Lexus appears to have been driven 8,414 miles between the time of purchase and the last documented service date of December 22, 2004, four months later – reflecting a substantial amount of use), plaintiffs would have to have incurred only $1,364.45 in these other claimed damages in order to satisfy the jurisdictional minimum – and again, this is assuming a high allowance for use under the Lemon Law and no damages at all for loss of use, except when the car was being serviced. Considering that the vehicle was returned to Grand Rapids for service a minimum of four times, plaintiffs' loss of wages or damages associated with each service call to Harvey would have to amount to only $341.11 per trip in order to satisfy the jurisdictional minimum. According to the Michigan Department of Transportation's web site (of which this court takes judicial notice), the distance between Traverse City and Grand Rapids is 140 miles, requiring travel for two hours thirty-minutes. A round trip would be twice the distance and time, or 280 miles requiring five hours of travel.

Of course, one would need to know the gas prices at the time and miles per gallon of gas traveled by the Lexus (and perhaps other factors) in order to precisely determine whether plaintiffs incurred expenses of up to $341.11 per trip, not including loss of time, emotional distress, and inconvenience. If (as but an example) federal court reimbursement rates for mileage to jurors – currently set at 40.5 cents per mile – were used to compute mileage costs, the expense of travel would be $113.40 per trip, leaving $227.71 per trip in other damages which must have been incurred in order to satisfy the jurisdictional minimum (assuming, of course, that plaintiffs made only those service calls to Harvey which are documented in the attachments to the complaint).

The defendants have computed that the jurisdictional amount is satisfied by adding to the purchase price of the vehicle potential vehicle rental fees for a replacement vehicle while the Lexus

was being serviced. The defendants submit that such fees could amount to $117.49, which defense counsel has (in an affidavit) stated she incurred when she rented a vehicle for a 24-hour period in Grand Rapids in March, 2005. If this rental cost is multiplied by at least four and added to the purchase price, defendants argue, the jurisdictional amount is satisfied ($117.49 x 4 = $469.96, added to $49,855.80 = $50,325.76).

      A charge of $117.49 seems a bit expensive for a one-day rental. On the other hand, it is not known whether plaintiffs were provided by Harvey or Lexus with a replacement vehicle (sometimes known as a "courtesy car") during repairs. For at least one service call (according to plaintiffs' October 8, 2004 to Lexus attached to the complaint), plaintiffs complain that they left the car at Harvey for the weekend. However, plaintiffs' have expressly alleged that they suffered damages which include "loss of use of the vehicle[.]" Complaint at 5, ¶ 25. Therefore, if this is viewed as a good-faith allegation, and considering the allegation together with the affidavit provided by the defendants, the court finds that the defendants have shown, by a preponderance of the evidence, that the amount in controversy more likely than not exceeds the jurisdictional threshold of $50,000.

      Plaintiffs contend that the defendants have asked for a stipulation that plaintiffs' incidental and consequential damages are less than $144.20, or the difference between the purchase price and $50,000. Plaintiffs' counsel argues that it would be "malpractice for [him]" make such a stipulation because "the future may bring incidental or consequential damages." However, the Sixth Circuit has held that "a post-removal stipulation reducing the amount in controversy to below the jurisdictional limit does not require remand to state court." Rogers, 230 F.3d at 872. Therefore, even if plaintiffs were to stipulate, such a stipulation would not control.

      If they had truly wished to avoid removal, what plaintiffs could easily have done was to include a provision in their complaint limiting their damages to less than $50,000. See Gafford, 997

15

F.2d at 157 ("Generally, since the plaintiff is the master of the claim, a claim specifically less than the federal requirement should preclude removal"). In this case, one is left to wonder why plaintiffs, who clearly prefer a state court venue, would have asserted a MMWA claim at all insofar as they appear to gain no particular advantage by doing so.[6] For whatever reason, plaintiffs have done so, and given the substantial price of their vehicle and their prayer for additional damages, they should have anticipated finding themselves in federal court. However, should plaintiffs elect to seek a voluntary dismissal of their federal claim under Fed.R.Civ.P. 41(a)(2), the court would be willing to consider ordering a discretionary remand of the remaining state law claims pursuant to 28 U.S.C. § 1441(c).

## CONCLUSION

The court concludes that the defendants have shown, by a preponderance of the evidence, that the amount in controversy – computed on the basis of all claims to be determined in this suit – more likely than not exceeds $50,000, an amount which is sufficient to sustain this court's exercise of jurisdiction under 15 U.S.C. 2310(d)(1)(B). The court therefore denies plaintiffs' motion.

So ordered this 5th day of July, 2005.

/s/ Wendell A. Miles
Wendell A. Miles
Senior U.S. District Judge

---

[6] The existence of the MMWA's provision permitting fee-shifting, 15 U.S.C. § 2310(d)(2), does not explain why plaintiffs invoked the federal statute, insofar as Michigan's Lemon Law contains a nearly identical fee-shifting provision. M.C.L. § 257.1407(2).